scheme is also evident in the informal observations of Plaintiff where she blindly lifts word-for-word the subjective critiques from one observation to another. (Ex. D, 153:3-155:1).

Based on these highly biased and subjective observations, Morgan placed Plaintiff on a "Teacher In Need of Assistance" plan ("TINA") at the beginning of January 2008. The TINA plan, administered by Morgan, required Plaintiff to submit lesson plans and other documents to Morgan on a regular and scheduled basis. (Ex. D, 156:5-157:15). Morgan refused Plaintiff any input in the plan even though Plaintiff expressed to Morgan that some of the requirements in the plan were wholly inappropriate as far as teaching music was concerned. (Ex. A, 110:1-6, 21-23). Plaintiff maintains he fully complied with TINA and Morgan acknowledges Plaintiff turned in lessons plans; however, Morgan did not retain the documents Plaintiff submitted and claims Plaintiff did not fully comply with TINA. (Ex. A, 112:21-113:18; Ex. D, 159:23-160:5). When asked if Plaintiff submitted a discipline management plan, Morgan reply is, "[n]ot that I can recall." (Ex. D, 164:7-9, 20-23). Plaintiff did submit a document responsive to this request, attached hereto and incorporated herein as Exhibit "J." Therefore, Morgan's assertion that Plaintiff did not comply with TINA cannot be verified or taken as true. Morgan also refused to provide Plaintiff additional learning opportunities by denying Plaintiff's request to attend the Texas Music Educators Conference. (Ex. D, 183:23-184:1).

5.      Plaintiff's second PDAS appraisal conducted by Angela Lundy-Jackson

Despite Plaintiff's compliance with TINA, Morgan conducted a PDAS appraisal on January 30, 2008, and assessed Plaintiff scores much worse than the April 3, 2007 evaluation. (*See* Ex. C of Def.'s Mot. for Summ. J.). Plaintiff vehemently objected to this appraisal as an "inaccurate unfair assessment" and requested a second appraisal. (Requests for Second PDAS Appraisal dated April

7

30, 2008, attached hereto and incorporated herein as Exhibit "K"; Ex. D, 64:2-4). In accordance with policy, HISD granted Plaintiff's request for a second appraiser and assigned Angela Lundy-Jackson ("Lundy-Jackson") to conduct a second appraisal.

The scores from Lundy-Jackson's May 2008 appraisal were merged with the scores from Morgan's January 2008 appraisal to serve as Plaintiff's official appraisal for the 2007-2008 school year. (PDAS appraisal by Lundy-Jackson, attached hereto and incorporated herein as Exhibit "L"). Lundy-Jackson provided sworn testimony in her affidavit that she did not keep a copy of her evaluation and that Exhibit "L" reflected the average of her and Morgan's scores. (*See* Ex.V of Def.'s Mot. for Summ. J., ¶¶ 7-8). Although Exhibit "L" contained low scores overall, the scores were higher than the scores contained in Morgan's January 30, 2008 PDAS appraisal. Based on simple mathematics and the contents in her affidavit she attested were "true and correct," Lundy-Jackson would have given Plaintiff "proficient" and/or "exceeds expectations" ratings in her PDAS evaluation. (Deposition testimony of Angela Lundy-Jackson, attached hereto and incorporated herein as Exhibit "M", 27:5-14). Lundy-Jackson's sworn testimony in her first affidavit would therefore be consistent with Plaintiff's testimony and the contents in Plaintiff's email to Regional Superintendent Warner Ervin in which Plaintiff states the review was positive and he was satisfied with most of her evaluations. (Email from Plaintiff to Warner Ervin dated May 23, 2008, attached hereto and incorporated herein as Exhibit "N"; Ex. A, 82:9-83:16). Nevertheless, after examining Lundy-Jackson's deposition testimony, HISD now seeks to rescind its previous assertion and claims the appraisal was not, in fact, the average of Morgan and Lundy-Jackson's scores, but rather Lundy-Jackson's original appraisal.

By February 22, 2008, and after further subjecting Plaintiff to highly subjective reviews twice

8

that same week, Morgan believed she had compiled sufficient documentation to recommend the nonrenewal of Plaintiff's contract. (Ex. D, 205:21-25). On March 28, 2008, Abelardo Saavedra, the HISD Superintendent at the time of these events, acted upon Morgan's recommendation and gave Plaintiff official notice of the nonrenewal of his employment contract with HISD.

## IV.
## ARGUMENT AND AUTHORITIES

**A.      Plaintiff can show a *prima facie* case of gender discrimination, and questions of material fact regarding pretext exist.**

Discrimination claims based on Title VII, 42 U.S.C. § 2000e *et seq.*, are evaluated under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must establish a *prima facie* case of discrimination by demonstrating that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership of the protected class than were other similarly situated employees who were not members of the protected class. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to produce a legitimate non-discriminatory explanation. *Id.* If the employer provides such an explanation, the inference of discrimination falls away and the burden shifts back to the employee to demonstrate the explanation is a mere pretext for discrimination. *Id.*

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." *Bryant*

9

*v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances. *Id.* In the context of summary judgment, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext. *Britt v. Grocers Supply Co.*, 978 F.2d 1441 (5th Cir. 1992).

A Title VII plaintiff can establish unlawful employment discrimination using circumstantial evidence. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 (5th Cir. 2004). The Fifth Circuit has also held: "[i]f a plaintiff cannot establish some or all of the *McDonnell Douglas* steps, the district court must examine all the evidence that has been adduced for other indicia of [...] discrimination relating to his discharge and determine whether it is more likely than not that the employer's actions were based on illegal discriminatory criteria." *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987). It should be noted that "[t]o establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)(emphasis added). "Simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991).

Defendant concedes Plaintiff can establish the first element of *prima facie* case of gender discrimination presumably, because as a male, he is a member of a protected class. Defendant's claim that Plaintiff is unable to establish the second element of a *prima facie* claim of gender discrimination is entirely unfounded and patently false. The undisputed evidence confirms HISD renewed Plaintiff's teaching contract four consecutive times over the course of eight years, and

10

Plaintiff consistently received proficient reviews in his capacity as a music teacher at Yates and Kelso. The direct evidence is clear Plaintiff displayed demonstrated success teaching students music throughout his tenure with HISD, and Defendant is unable to explain how Plaintiff suddenly became "unqualified" to instruct elementary school students.

Plaintiff can also establish the third element of a *prima facie* claim of gender discrimination quite simply because he did, in fact, suffer an adverse employment action when HISD acted upon Morgan's recommendation to not renew his employment contract after it had been continuously renewed over the course of eight years. Furthermore, the cases cited by Defendant are inapposite because the plaintiffs in the referenced cases did not lose their jobs or suffer an ultimate adverse employment action.

Likewise, Plaintiff can also establish the fourth element of a *prima facie* claim of gender discrimination. Despite Defendant's assertion to the contrary, Plaintiff and Rhodes, the only other music teacher at Hines Caldwell and who was female, were similarly situated. In evaluating whether employers are considered "similarly situated," the employee being compared must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person. *Lee*, 574 F.3d at 260. Defendant admits Plaintiff and Rhodes were similarly situated in 2006 as they were both classroom music teachers, yet claims they were no longer similarly situated when Rhodes returned to Hines Caldwell in September 2007. This proffered explanation is also without merit. Even though Rhodes returned in a part-time "capacity," both Rhodes and Plaintiff were in charge of administering musical instruction to the students requiring the use of a piano with which to teach, both were without a classroom, and Morgan determined their employment status. The only difference was Morgan allowed Rhodes the use of one of the three

11

stationary pianos on campus while she denied Plaintiff that privilege to conduct his classes. (Ex. D, 133:19-134:2).

In addition, Valeria Vaughn ("Vaughn"), a female teacher at Hines Caldwell was named Teacher of the Year notwithstanding the excessive amount of tardies she accumulated on her record. (*See* Def.'s Mot. for Summ. J. p. 19). Plaintiff's awareness of whether in fact Vaughn received a reprimand is inapposite. Plaintiff was discriminated against on the basis of his gender because Vaughn's tardy record was ignored when she was chosen for the Teacher of the Year award, while Plaintiff's record was cited as a basis in the notice of nonrenewal of his contract.

A genuine issue of material fact exists on the issue of pretext regarding Defendant's proffered reasons to rebut Plaintiff's gender discrimination claim. Although Morgan contends Plaintiff was denied the use of the piano in the cafeteria because he was unable to control his class as they moved to the cafeteria, there is no documented evidence to show Plaintiff had difficulty in this task other than Morgan's self-serving claim. Such record is nowhere to be found in all of Morgan's appraisals and observations to support her claim, and Defendant cannot stand alone on the testimony of an interested witness. (Ex. D, 137:15-25, 139:4-14).    This presents reasonable doubt as to whether Defendant satisfied its burden to articulate a non-discriminatory reason.

**B.      Plaintiff can prove a *prima facie* case of retaliation, and questions of material fact regarding pretext exist.**

Like discrimination claims, retaliation claims are analyzed using the *McDonnell* framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). A plaintiff may also prove retaliation by circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). The plaintiff has the initial burden of establishing a *prima facie* case and must demonstrate

12